TRACY and VAN RENSSELAER *against* WHIPPLE,
Sheriff, &c.

THIS was an action of *debt* for an escape. The cause was tried, at the *Madison* circuit, in *May*, 1811, before Mr. Justice *Yates*.

The plaintiffs gave in evidence a judgment recovered by them against one *W. Weld*, in *August* term, 1807, and a *test. ca. sa.* on which the defendant returned that he had taken *Weld*, and had him in his custody. On the 2d *May*, 1808, *Weld* was *surrendered* by his *bail* to the custody of the sheriff, at the suit of the plaintiffs, and a bond in due form was given to the sheriff, for the liberties, on which *Weld* was suffered to go within the liberties of the gaol; and was within them on the 13th *July*, 1808, when, at 8 o'clock in the evening of that day, the

Where a defendant had been surrendered by his bail, and was permitted by the sheriff to go at large within the liberties of the gaol, on giving security by bond, according to the statute, and a *ca. su.* at the suit of the plaintiff was afterwards delivered to the sheriff, who did not take a new bond, and the defendant, on the next day, went beyond the liberties; it was held, in an action for an escape, on *eo instanti*, an

the execution, that the mere delivery of the *ca. su.* was not, *ipso facto, et eo instanti*, an arrest, so as to place the defendant in custody on the execution, and that the sheriff was not liable.

NEW-YORK,
October, 1811.

TRACY
v.
WHIPPLE.

*test. ca. sa.* was delivered to the defendant, at his house, within the liberties, *Weld* being, at that time, in a room adjoining to that in which the sheriff was sitting, and the door open between them. The sheriff was then attending to a sick child; and it did not appear that he knew that *Weld* was in the house. When the execution was delivered, the sheriff asked whether the plaintiff's attorney wished it to be served immediately, to which the person who delivered it, answered, that he did not know, but supposed it would make no difference, if it was not served immediately, or until the return day. *Weld* lived at a house within the liberties, about 80 rods distant from the sheriff's house; and in the morning of the 14th *July*, he went a few rods beyond the liberties, but returned in a few minutes. He was seen within the liberties until the 20th *July*, when he was committed to close custody on the *ca. sa.* and he was afterwards discharged under the act for the relief of prisoners, &c. by the court of common pleas, in *January*, 1809.

It appeared, also, that before the delivery of the execution to the defendant, a writ had been taken out against him by the plaintiffs, for an escape on the execution, and a coroner requested to serve it the next morning; but that writ was afterwards quashed, and the present suit instituted.

The jury, under the direction of the judge, found a verdict for the defendant.

*Platt*, for the plaintiffs. The bond taken by the sheriff, for the liberties, was not only for his security, during the debtor's confinement on *mesne process*, but until he should be discharged by due course of law. The delivery of the execution, afterwards, did not discharge the bond. The statute (sess. 24. c. 91.) says, that "it shall be the duty of the sheriffs to permit any prisoner who shall be in their custody on civil process only, to go at large within the liberties," provided the prisoner shall

give a security by bond. It makes no distinction between mesne and *final* process. The statute did not intend that the sheriff should be obliged to take a *new* bond, or new security, whenever a *ca. sa.* was delivered to him.

NEW-YORK,
October, 1811.

TRACY
v.
WHIPPLE.

The defendant was in custody, on the surrender by his bail. An actual arrest on the *ca. sa.* was not necessary; but the delivery of the *ca. sa.* to the sheriff was a constructive arrest.* And from the circumstances stated in the case, an actual arrest is fairly to be presumed. The debtor was in the house of the sheriff, and within his view, at the time the execution was delivered to him; and it is right to presume that he did his duty by arresting him.

* 1 *Salk.* 273. 3 *Com. Dig. Execution,* S. z. 5 *Co* 89. *Esp. N. P.* 605.

The defendant, then, having a bond as security for the liberties, this case is precisely within that of *Tillman* v. *Lansing.*†

† 4 *Johns. Rep.* 45.

*Gold*, contra. The decisions in *England*, as to constructive arrests, are applicable only where the debtor is in *arcta custodia;* not in a case like the present, where he is at large within the liberties granted by the statute. In *Atkinson* v. *Jameson,*‡ the defendant had been arrested and was discharged on the same day, by the sheriff, who did not know that a detainer had been lodged in his office, at the time, at the suit of another plaintiff; and the sheriff arrested the defendant the next day, and it was held that the second arrest was an original taking, and not a retaking after an escape.

‡ 5 *Term Rep.* 28.

Again, the statute requires that the bond taken should be in double the sum for which the debtor is confined. Here the judgment was for 2,388 dollars and 6 cents, and the bond was for 4,000 dollars only. The present suit is for an escape from custody on a particular execution; and are the bail on *mesne* process to be held responsible for the increased risk of an escape on the execution? It was enough, in this case, if the *ca. sa.* was returned with the prisoner in custody, at the return day thereof; and

NEW-YORK,
October 811.

GRAY
v.
WHIPPLE.

it was immaterial where the plaintiff was before. An arrest is not to be presumed, and no arrest at the time of the alleged escape has been proved.

*Platt*, in reply, said the case of *Atkinson* v. *Jameson* was not applicable. There the writs were at the suit of different plaintiffs. The only point decided was, that the sheriff had no right of recaption after a voluntary escape. But in the present case, the execution is delivered in the same suit between the same parties.

There is no distinction between a person in *arcta custodia*, and a person within the liberties; for the liberties are regarded as an extension of the walls of the prison. The debtor is still in prison, and the sheriff must be liable for his escape.

*Per Curiam.* Without considering the question whether the bond taken upon the surrender would operate after the prisoner was charged in execution, the court are of opinion, that the prisoner could not be considered, at the time of the escape, as charged in execution, so as to make the sheriff responsible for that escape, as of a prisoner in execution. The mere delivery of the execution to the sheriff, was not, *ipso facto*, and, *eo instanti*, an arrest, so as to place the prisoner in custody under the execution, by judgment of law. The doctrine in *Frost's* case (5 *Co.* 89.) does not apply, when the prisoner is not in close custody, but at large upon the liberties of the gaol. These liberties are, in many instances, very spacious, and it might be hours before the sheriff could find the prisoner, so as to secure himself against the increased responsibility which the escape of a prisoner in execution might create. The doctrine in *Frost's* case is founded on the fact, that it would be a useless and idle act to arrest a person already in the close custody of the officer. But a prisoner on the limits is not in such custody, and the sheriff can, on a new arrest, essentially change his

NEW-YORK,
Octoder, 1811.

condition, by requiring new security, or by confining him.

The only question of fact, is, whether there was an actual arrest, or any act amounting to one, between the time of the delivery of the execution in the evening, and the prisoner's escape the next morning. The case does not furnish any evidence of such an arrest. The presumption is rather the contrary, considering the situation of the sheriff's family at the time, and the conversation which passed between the sheriff and the agent who delivered the writ. There would be no use, then, in granting a new trial, in order to have a jury pass upon that fact; and though the cause was placed upon a different ground at the trial, yet when, upon the view of the whole case, the verdict appears to be correct, the motion for a new trial ought to be denied.

Motion denied.